13:01:31

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
*****************************************************************
KEVIN M. QUATREVINGT

                                    Docket No. 19-CV-1171
                                    Section "H"
v.                                  New Orleans, Louisiana
                                    Friday, August 2, 2019

JEFF LANDRY, ET AL
*****************************************************************


        TRANSCRIPT OF PRELIMINARY INJUNCTION PROCEEDINGS
        HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                  UNITED STATES DISTRICT JUDGE



APPEARANCES:

THE PLAINTIFF:                  KEVIN M. QUATREVINGT
                                62114 Warrior Road
                                Lacombe, LA 70445


FOR THE DEFENDANTS RANDY
SMITH, ANGELINA COOK AND
DENISE PORTER:                  CITY OF SLIDELL
                                BY:  THOMAS S. SCHNEIDAU, ESQ.
                                P.O. Box 828
                                Slidell, LA 70459

FOR THE DEFENDANTS JEFF
LANDRY, ATTORNEY GENERAL,
AND JAMES LeBLANC, LOUISIANA
DEPARTMENT OF CORRECTIONS:      LOUISIANA DEPARTMENT OF JUSTICE
                                BY:  JEFFERY A WHEELER, ESQ.
                                     CHRISTOPHER N. WALTERS, ESQ.
                                1885 North Third Street, 2nd Floor
                                Baton Rouge, LA 70804

FOR DEFENDANT DISTRICT
ATTORNEY WARREN MONTGOMERY:     DISTRICT ATTORNEY'S OFFICE
                                22ND JUDICIAL DISTRICT COURT
                                BY:  CARY J. MENARD, ESQ.
                                701 N. Columbia Street
                                Covington, LA 70433

1

2

Official Court Reporter:          Karen A. Ibos, CCR, RPR, CRR, RMR
3                                 500 Poydras Street, B-275
                                  New Orleans, Louisiana 70130
4                                 (504) 589-7776

5

6

    Proceedings recorded by mechanical stenography, transcript
7  produced by computer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
 1                    P R O C E E D I N G S

 2              (FRIDAY, AUGUST 2, 2019)

 3          (PRELIMINARY INJUNCTION PROCEEDINGS)

 4

 5      (OPEN COURT.)

 6              THE DEPUTY CLERK:  Court's in session, you may be seated.

 7    This is Civil Action 19-1171, Quatrevingt v. Landry, et al.

 8    Counsel, you can make your appearance.

 9              MR. SCHNEIDAU:  Your Honor, Thomas Schneidau on behalf of

10    Sheriff Randy Smith, Deputy Angelina Cook, and Sergeant Denise

11    Porter.

12              THE COURT:  Thank you.

13              MR. WHEELER:  Your Honor, Jeffrey Wheeler on behalf of

14    defendants Jeff Landry and the Department of Corrections.

15              MR. WALTERS:  Your Honor, Christopher Walters on behalf

16    of defendant Jeff Landry, Attorney General, and James LeBlanc,

17    Secretary of Public Safety and Corrections.

18              MR. MENARD:  Your Honor, Cary Menard on behalf of

19    District Attorney Warren Montgomery.

20              MR. QUATREVINGT:  Kevin Quatrevingt on behalf of myself.

21              THE COURT:  We are here this afternoon on a motion for

22    preliminary injunction.  I have read the information that was

23    provided.  As you all should be aware, on a preliminary injunction

24    the Court's going to have four things to consider; which is,

25    primarily a substantial likelihood that the plaintiff would prevail
</pre>

13:02:38  1    on the merits, a substantial threat that he would suffer

13:02:42  2    irreparable injury if the injunction is not granted, plaintiff's

13:02:46  3    threatened injury outweighs the threatened harm to the party from

13:02:50  4    whom he seeks to enjoin, and finally, granting a preliminary

13:02:54  5    injunction will not disserve the public interest.

13:02:57  6         I think, very frankly, this hearing should be focused on

13:03:01  7    whether or not plaintiff is able -- there's a substantial

13:03:05  8    likelihood that he would prevail on the merits, I think that's the

13:03:10  9    primary focus that this court is interested in at this point.

13:03:13  10        And I will be -- I would like to have some argument

13:03:19  11   before we proceed.  So, Mr. Quatrevingt, if you could come up, I

13:03:22  12   have some questions I would like to ask you.

13:03:42  13        Mr. Quatrevingt, I've looked at your filings, I looked at

13:03:46  14   the order and reasons from the judge in the 22nd JDC, the first

13:03:55  15   that had written reasons, and then the minute entry on the second.

13:03:59  16   And my question for you is, what constitutional right do you claim

13:04:02  17   is being violated?  I've also read the First Circuit opinion.

13:04:09  18        Just so everyone knows, I've kind of got the lay of the

13:04:12  19   land.  I am not sure the First Circuit opinion says what everyone

13:04:16  20   says it says; I am not sure that the motion to quash the indictment

13:04:19  21   says what you say it says.  So my question to you is, what

13:04:22  22   constitutional right is being violated?

13:04:24  23        MR. QUATREVINGT:  Your Honor, without having my notes,

13:04:26  24   just off the cuff --

13:04:28  25        THE COURT:  You can get your notes.

13:04:30  1          MR. QUATREVINGT:  I think I'll be all right for now.

13:04:32  2          THE COURT:  Okay.

13:04:33  3          MR. QUATREVINGT:  I would say at least the Second and

13:04:37  4   Fifth Amendment, I believe it's the Second Amendment right to due

13:04:40  5   process.  The Louisiana legislature laid out a specific process for

13:04:46  6   labelling someone a sex offender, determining someone is a sex

13:04:50  7   offender, labelling a person a sex offender, and all of the

13:04:54  8   subsequent actions pursuant to that.  They also lay out a process

13:04:57  9   for challenging that, and I think there's some disagreement on

13:04:59 10   whether or not I complied with that process pursuant to law.  It

13:05:04 11   gets very in-depth at that point because one law points to another

13:05:08 12   law points to another law.  But I complied with that due process

13:05:11 13   and had a decision by another judge that affirms that.

13:05:15 14          Additionally, the Fifth Amendment --

13:05:18 15          THE COURT:  Wait.  Let's back up.  Are you telling me you

13:05:21 16   did register?  Because the First Circuit there was a grant of an

13:05:27 17   exception saying you had a time limit within which to challenge the

13:05:32 18   method of registration, what you had to do, and that time limit had

13:05:37 19   passed.

13:05:38 20          MR. QUATREVINGT:  Right.  And, your Honor, I would argue

13:05:39 21   that an analysis of the law, as well as what the defendants

13:05:43 22   actually submitted to me and what is written in the law that they

13:05:46 23   cited in the notice only indicates the ability to appeal, to

13:05:52 24   challenge the time frame of registration, how long you register and

13:05:57 25   the frequency of in-person verification.  The paperwork they send,

13:06:00 1   the law as written in the statute does not indicate any ability to

13:06:04 2   challenge the actual requirement to register.

13:06:09 3           And that is I think is where we diverge in our beliefs.

13:06:13 4   My belief is that the law was written to say you have to be a sex

13:06:17 5   offender.  When you are a sex offender, the department then can

13:06:21 6   say, okay.  This is how long you're going to be a sex offender and

13:06:24 7   this is how often you're going to come see us as a sex offender.

13:06:29 8   And nothing they've given indicates that I can challenge anything

13:06:32 9   outside of that scope.

13:06:34 10          So I would argue that it lacks due process at best

13:06:38 11  because it fails to notify me that that appeal that is being

13:06:42 12  offered is all encompassing of all sex offender requirements, not

13:06:46 13  just the two that it specifies.

13:06:50 14          THE COURT:  So your argument, if I understand it, is that

13:06:52 15  the notice you received -- is that the notice you received in

13:06:55 16  military court --

13:06:56 17          MR. QUATREVINGT:  No, ma'am.

13:06:57 18          THE COURT:  -- or the notice you received from the state?

13:06:58 19          MR. QUATREVINGT:  From the state.

13:07:00 20          THE COURT:  -- did not comply with requirements of due

13:07:03 21  process; that is, it didn't tell you the circumstances under which

13:07:08 22  you would have to register?

13:07:10 23          MR. QUATREVINGT:  Well, your Honor, bordering on

13:07:13 24  relitigating matters that were raised already in court, which I

13:07:18 25  don't want to do, but understandably you're in charge, those

13:07:20 1   matters were brought up that that notice wasn't sufficient, that

13:07:23 2   notice didn't cover all of that.  But, yes, that would be my

13:07:26 3   argument.  For the state's -- or the defendants' in general

13:07:30 4   assertion that that letter is what gave me one year to challenge

13:07:34 5   everything in sex offender law, when the letter specifies that you

13:07:38 6   may challenge time frame and frequency.  It spells it out, as does

13:07:43 7   the Revised Statute 542.1.3.  Specifies the department may, or I

13:07:51 8   think it's shall determine the time frame and frequency and that

13:07:53 9   you have one year to challenge those.  But I think the defendants

13:07:58 10  are erring in that they're expanding that to be controlling of all

13:08:01 11  sex offender requirements.

13:08:02 12      And I think the legislature specified who would have to

13:08:06 13  register; and in regards to military, federal, and out of state and

13:08:09 14  foreign convictions, they specify equivalent offense.  And we went

13:08:13 15  through a three year, eight-month process of reviewing my military

13:08:17 16  conviction and determining -- a judge determined that it was not

13:08:20 17  equivalent.  So the requirement that it be equivalent before they

13:08:25 18  can make the decision of how long and how often isn't met.

13:08:31 19      Additionally, your Honor, in regards to the Fifth

13:08:34 20  Amendment about violation, double jeopardy.  Federal courts, as

13:08:41 21  well as state courts, have held that double jeopardy is not just,

13:08:46 22  you know, plain old double jeopardy, it encompasses res judicata,

13:08:50 23  it encompasses collateral estoppel.  And that would be my argument

13:08:55 24  is that Judge Coady in 2014 made it a finding of fact that the

13:08:58 25  military conviction is not equivalent.  And that was not

13:09:01  1   challenged.  It was well aware, the state was well aware; they

13:09:05  2   objected in the courtroom and then they just said, no, we're not

13:09:09  3   going any further.  At that point that matter should have become

13:09:12  4   final, that determination by Judge Coady that the military offense

13:09:16  5   is not a sex offense, it's not equivalent to a sex offense should

13:09:22  6   become final, it should be final.  It should be subject to --

13:09:25  7        THE COURT:  Why is this affected by the ongoing

13:09:28  8   requirement to register though?

13:09:33  9        MR. QUATREVINGT:  Your Honor, the requirement to register

13:09:36 10   is based on the predicate offense being equivalent.

13:09:40 11        THE COURT:  Right.

13:09:41 12        MR. QUATREVINGT:  And a judge has determined it's not

13:09:43 13   equivalent to finality.  It has been finally determined my military

13:09:47 14   conviction is not equivalent to a sex offense.  So every statute

13:09:50 15   that starts off with a person subject to this chapter, that person

13:09:55 16   has to be subject to the chapter, either through a state sex

13:09:58 17   offense or equivalent sex offense.  I mean, absent the defendants

13:10:05 18   citing another offense other than the military offense which has

13:10:08 19   been determined not equivalent, then I would suggest that there is

13:10:12 20   no other sex offense.

13:10:14 21        So when we breakdown the whole statute, the whole

13:10:17 22   chapter, we get to the very tip top of it that says a person

13:10:22 23   subject to this chapter, and we look at the definitions of people

13:10:28 24   subject to the chapter, it all requires equivalents and that's been

13:10:31 25   decided.

13:10:32 1          THE COURT:  All right.  I need to now go back to the
13:10:35 2 first question I asked, what is the constitutional right?
13:10:40 3          MR. QUATREVINGT:  I'm sorry?
13:10:41 4          THE COURT:  What is the constitutional right that's being
13:10:44 5 violated?  You don't need to give me an amendment number.
13:10:47 6          MR. QUATREVINGT:  The right to due process and the -- I
13:10:49 7 hesitate to call it a right to -- I guess a right to be free from
13:10:55 8 double jeopardy via collateral estoppel.  As well as the right to
13:11:01 9 be free from sex offender obligation, which is a right upheld by
13:11:04 10 the Fifth Circuit in *Meza v. Livingston*.
13:11:09 11          THE COURT:  Okay.  Thank you.
13:11:11 12          MR. QUATREVINGT:  May I take a seat, your Honor?
13:11:13 13          THE COURT:  Yes.  Mr. Schneidau.
13:11:18 14          MR. SCHNEIDAU:  May it please the court, Thomas Schneidau
13:11:23 15 on behalf of Sheriff Randy Smith, Deputy Angelina Cook, and
13:11:27 16 Sergeant Denise Porter.
13:11:29 17          Your Honor, if I could just briefly respond to those two
13:11:31 18 constitutional issues raised.  And if I could, just as a procedural
13:11:36 19 matter, I provided your Honor with a copy of the exhibits that we
13:11:38 20 had attached to our motion to dismiss, which I believe, your Honor,
13:11:42 21 is all just public records and not in dispute.  And I would like to
13:11:45 22 go ahead and offer, file, and introduce those into evidence.
13:11:49 23          THE COURT:  Any objection?
13:11:50 24          MR. QUATREVINGT:  No, your Honor.
13:11:51 25          THE COURT:  Let it be admitted.

13:11:52 1        MR. SCHNEIDAU:  And, your Honor, with respect to due

13:11:54 2  process, I refer you, please, to Exhibit G; and therein you will

13:12:01 3  find a Notice of Release/Acknowledgment of Convicted Sex Offender

13:12:06 4  Registration Requirements.  You'll see at the bottom of that page,

13:12:10 5  your Honor, that Mr. Quatrevingt signed there, and there are

13:12:14 6  certain disclosures contained therein and certain acknowledgments.

13:12:17 7  And among those acknowledgments, and this is back in 2006, was the

13:12:21 8  requirement to register as a sex offender for the state that he is

13:12:25 9  in.  So the plea now that somehow he was unaware or didn't have

13:12:30 10  notice that he was required to register as a sex offender defies

13:12:37 11  belief really.  And this is in 2006.

13:12:39 12        And you'll note, too, that the issue that we're talking

13:12:42 13  about with the first quash of the criminal indictment occurred in

13:12:47 14  2014, I believe.  So we have eight years in-between, and I don't

13:12:52 15  think it's in dispute that Mr. Quatrevingt did plead guilty at one

13:12:56 16  point for failure to register, which is also contained in the

13:12:59 17  documents provided.  And also that I don't think it's in dispute

13:13:05 18  between the parties, I'd ask Mr. Quatrevingt if he would stipulate,

13:13:11 19  if your Honor so pleases, that he has appeared to register in the

13:13:13 20  past.

13:13:13 21        THE COURT:  Uh-huh.

13:13:15 22        MR. SCHNEIDAU:  Both in St. Tammany Parish and in

13:13:18 23  Tangipahoa Parish from what I understand.

13:13:21 24        So that's the due process question, your Honor.

13:13:23 25        And I know you've read the First Circuit opinion, and

13:13:28 1   quite frankly, there's a collision coming at the First Circuit in

13:13:31 2   Louisiana because now we've got the civil case in which the Court

13:13:35 3   ruled, as I read it, that the time period is a preemptive period

13:13:40 4   and that time has run.  And then secondly, now we have the appeal

13:13:43 5   of the latest quashing of the criminal indictment.  So the First

13:13:47 6   Circuit is going to have to deal with those issues.

13:13:50 7         And as to double jeopardy, I don't really feel it's the

13:13:54 8   sheriff's issue to talk about.  We don't prosecute anybody.  So the

13:13:58 9   issue of double jeopardy...

13:14:00 10        But I would say this, I believe, and I just thought of it

13:14:03 11  today on the drive over here, I know there is a recent Supreme

13:14:08 12  Court opinion that came out reaffirming the doctrine of the two

13:14:10 13  sovereigns, okay.  And so let's just assume for the sake of

13:14:14 14  argument that it's not a criminal violation under Louisiana law for

13:14:21 15  Mr. Quatrevingt not to register.  But we still have SORNA out

13:14:25 16  there, which is a federal law which provides its own penalties for

13:14:28 17  failure to register.  And the whole registration system as set up

13:14:31 18  by the federal government is through the local authorities.  So

13:14:35 19  that comes down to the sheriff.

13:14:36 20        So the sheriff's role really is to take the list that's

13:14:40 21  provided to them by the state and to not add or subtract to the

13:14:45 22  list or make its own independent decisions but just to follow what

13:14:49 23  the state is providing through the state's own obligations under

13:14:54 24  federal law.  And for the state to receive those funds, it's got to

13:14:57 25  be in compliance.

13:14:58   1          So I would submit to the Court that even if the argument

13:15:05   2   could be made, which we certainly don't concede that

13:15:08   3   Mr. Quatrevingt is not required under state law to register,

13:15:11   4   there's still the issue whether under federal law he is required to

13:15:15   5   register.  And Judge Coady I don't think is deciding an issue of

13:15:21   6   federal criminal law in that lawsuit.  Two sovereigns, it occurs to

13:15:27   7   me that the federal government could bring an action for failure to

13:15:32   8   register.

13:15:33   9          THE COURT:  But it would be the federal government.

13:15:35  10          MR. SCHNEIDAU:  It would.  But in order to have that, in

13:15:38  11   order to know the sheriff would need to continue to fulfill his

13:15:41  12   obligations, because the federal government is not the one doing

13:15:44  13   that.  It's up to the states and the local governments through the

13:15:47  14   sheriffs to implement that system.  So the federal government could

13:15:52  15   never bring those charges if it didn't have any mechanism by which

13:15:55  16   to know, hey, who is not in compliance?

13:15:58  17          So I would submit to you -- and, your Honor, too, I know

13:16:02  18   we said we may call a witness today, but with certain stipulations,

13:16:07  19   we're satisfied to submit this on the brief and go over those

13:16:11  20   stipulations, perhaps, in a moment.

13:16:15  21          But I would submit to you based on the documents that we

13:16:19  22   have, the substantial likelihood question -- and I would also --

13:16:26  23   counsel's in favor of not granting the preliminary injunction.

13:16:29  24          And let me also point out just a couple of things.  When

13:16:32  25   the criminal court in 2014, I believe it was, the first quashing of

13:16:38  1    the indictment, quashed the indictment, the request was made by

13:16:42  2    Mr. Quatrevingt as reflected in the records to require that his

13:16:45  3    name be taken off of the registration system.  What does the court

13:16:48  4    say?  It's a criminal court, we don't have jurisdiction to do this.

13:16:51  5    That's a civil matter that needs to be processed through a civil

13:16:56  6    lawsuit.  So we've got the court that quashed the indictment saying

13:17:02  7    I cannot do that.  This is not part of what I am ruling today.

13:17:08  8         And so then we've got the issue where Mr. Quatrevingt

13:17:11  9    filed a civil lawsuit, first in the 22nd, got I think an improper

13:17:18 10    venue exception, went up, and then ultimately through the 19th JDC,

13:17:24 11    and then we have the ruling on peremption.

13:17:27 12         So again, back to the due process argument.  The process

13:17:30 13    has always been there.

13:17:32 14         Back in 2010 when Mr. Quatrevingt received this letter,

13:17:36 15    and I believe that's referenced in the documents provided D, the

13:17:50 16    April 22nd, 2010 letter.  I mean, there was notice given, hey, if

13:17:54 17    you want to challenge this.  You know, why suddenly four years

13:17:58 18    later does this become an issue.  And really eight years from the

13:18:02 19    conviction.

13:18:03 20         So that's the position the sheriff -- and, your Honor, if

13:18:09 21    I could just perhaps --

13:18:11 22         THE COURT:  It does become problematic, I think you can

13:18:19 23    agree with me, because what we have is a situation what you told me

13:18:23 24    is a judge has said this is not an offense for which registration

13:18:33 25    is covered under the statute, so I will quash the indictment; but

13:18:40   1   it's too late to challenge the mechanism with which he has to

13:18:44   2   register, but --

13:18:47   3           I guess the question is, where does this take us?  I

13:18:50   4   mean, is it constitutional to continually arrest him for activity

13:18:53   5   that a judge has previously said is not a problem.

13:18:57   6           MR. SCHNEIDAU:  Well, there's two steps in that process.

13:19:01   7           THE COURT:  I think it's a bit of the conversation we had

13:19:05   8   the other day.

13:19:05   9           MR. SCHNEIDAU:  I think everyone here will gladly admit

13:19:08   10   that this is kind of a novel issue.  I don't think there's any

13:19:11   11   dispute about that.  The procedural happenings that brought us to

13:19:15   12   this point are something that I've not seen in my almost ten years

13:19:19   13   of practice.

13:19:21   14           THE COURT:  Well, I have more than ten under my belt and

13:19:23   15   this is new for me, too.

13:19:25   16           MR. SCHNEIDAU:  Yes, your Honor.

13:19:27   17           THE COURT:  Just so you know.

13:19:28   18           MR. SCHNEIDAU:  I understand.  And what we'd submit

13:19:30   19   again, just back to the question of substantial likelihood on the

13:19:34   20   merits as against the sheriff, because that's really what the

13:19:37   21   motion is here today.  If Mr. Quatrevingt will stipulate that the

13:19:41   22   sheriff does not create this list, and there's plenty of authority

13:19:46   23   that we cited in our motion to dismiss that on the Monell claims,

13:19:50   24   the official capacity liability of the sheriff, it's got to be your

13:19:54   25   policy that you're enacting.  This is something that's baned upon

13:19:59  1    us from the state.  It's a list that we received --

13:20:02  2              THE COURT:  I understand that, but I don't think you

13:20:04  3    answered my question yet --

13:20:05  4              MR. SCHNEIDAU:  Please.

13:20:06  5              THE COURT:  -- which is, is it constitutional for the

13:20:09  6    sheriff to continue arresting a person for an offense that a judge

13:20:13  7    said can't be indicted on?  I mean, I just think it's --

13:20:22  8              MR. SCHNEIDAU:  And I understand --

13:20:24  9              THE COURT:  I've been grappling with this because what we

13:20:31  10   have found are cases where it is appropriate to enjoin the sheriff,

13:20:36  11   but those were generally in the civil rights movement context where

13:20:42  12   people were arresting people for things that clearly were not

13:20:50  13   crimes, oh, gosh, segregating schools and that sort of thing.  So

13:20:57  14   some of the cases that we've seen and that have been reported are

13:21:00  15   those that occurred during the midst of some of those civil rights

13:21:05  16   movements where law enforcement was working, frankly, hand-in-hand

13:21:09  17   to suppress the enactment of certain laws.

13:21:12  18             MR. SCHNEIDAU:  Sure.

13:21:13  19             THE COURT:  This is not that.

13:21:14  20             MR. SCHNEIDAU:  Sure.

13:21:15  21             THE COURT:  And so it's a little bit different.  But I am

13:21:18  22   just asking you if you can help me, because I am trying to

13:21:21  23   formulate.

13:21:21  24             MR. SCHNEIDAU:  Sure.  So if I can go through a two-step

13:21:24  25   process.  I would say in prior to the arrest made there has to be a

13:21:28 1    finding of noncompliance, so the sheriff's first obligation is to

13:21:31 2    make sure that there is compliance, that those who are listed on

13:21:34 3    the list that they received are actually showing up, and I believe

13:21:37 4    Mr. Quatrevingt's case would be once every six months, and that

13:21:41 5    they're going to verify the address and all of the data that he is

13:21:43 6    reporting.

13:21:46 7         So would it be unconstitutional for the sheriff to

13:21:49 8    continue to do that?  I say clearly not.  And so one of the reasons

13:21:54 9    is just what I stated, it's also a violation under federal law not

13:21:58 10   to register.  So as to the first issue, and specifically addressing

13:22:02 11   due process and double jeopardy, again, the process that is due,

13:22:07 12   that's the real kind of question there --

13:22:10 13         THE COURT:  Right.

13:22:10 14         MR. SCHNEIDAU:  -- that's the heart of the issue, and I

13:22:14 15   think that -- the courts, the federal courts under the

13:22:18 16   Anti-Injunction Act and Younger abstention have to give great

13:22:25 17   deference, generally speaking, to the state courts.  And this is a

13:22:27 18   matter that's making its way through the state courts, and the

13:22:30 19   state courts are going to have an opportunity to address and

13:22:34 20   Mr. Quatrevingt's going to be able to go to the First Circuit when

13:22:38 21   it takes up this matter and make his arguments and brief the issue.

13:22:41 22         So, no, I don't think it's unconstitutional for the

13:22:47 23   sheriff at this point in the proceedings to continue to require

13:22:52 24   compliance because there is process in place, it is the process

13:22:56 25   that's due, and there's no showing of some sort of extraordinary

13:23:01  1   circumstances where the state court is simply abdicating its

13:23:07  2   responsibilities.

13:23:07  3          And I think, you know, I understand that the DA has a

13:23:10  4   motion to stay these proceedings, and I think that's one of the

13:23:14  5   reasons is because this process that we have is making its way

13:23:18  6   through the state courts --

13:23:21  7          THE COURT:  And I will tell you, I think that's likely

13:23:25  8   where it belongs, you know.  I am not rendering anything, but the

13:23:30  9   state needs to give us some direction in this whether or not this

13:23:39 10   is a violation for this man.  But I guess --

13:23:42 11          And I understand that what you're telling me is that

13:23:46 12   there is also this federal obligation, but I don't think he has

13:23:51 13   been charged with federal offense for failure to register, has he.

13:23:56 14          MR. SCHNEIDAU:  Not to my knowledge, your Honor.

13:23:58 15          And let me also just put out a hypothetical here because

13:24:01 16   it very well could happen if the court were to say, Sheriff Smith,

13:24:05 17   stop enforcing this law, don't arrest Mr. Quatrevingt, don't

13:24:09 18   require compliance.  So what if Mr. Quatrevingt crossed the state

13:24:15 19   lines and heads into Picayune, Mississippi?  What then?  What

13:24:19 20   happens then at the state level in Mississippi?  Nothing that's

13:24:23 21   done here in terms of preventing the sheriff --

13:24:25 22          THE COURT:  Well, that's not before me and so --

13:24:28 23          MR. SCHNEIDAU:  It's not before us --

13:24:30 24          THE COURT:  Nobody has asked for a nationwide injunction.

13:24:33 25          MR. SCHNEIDAU:  But it represents --

13:24:35 1                THE COURT:  That's not before me.

13:24:36 2                MR. SCHNEIDAU:  It represents the complexities of the

13:24:37 3        issues that are before the court I think.

13:24:39 4                THE COURT:  I understand.

13:24:40 5                MR. SCHNEIDAU:  So I think if we're talking about

13:24:43 6        specifically at this juncture for preliminary injunction, what is

13:24:47 7        the status quo?  If this were an instance where Mr. Quatrevingt for

13:24:51 8        the first time was required to register and he had never in the

13:24:54 9        past 12 years, 13 years ever registered before, well, maybe there

13:25:00 10       would be some more traction to that argument.  But here the status

13:25:04 11       quo is that he has registered, with a few exceptions where he's

13:25:08 12       failed to and has been prosecuted.

13:25:10 13               But if we want to talk about maintaining the status quo

13:25:13 14       throughout these proceedings, the status quo is registration

13:25:17 15       continues, compliance is required until we have a definitive ruling

13:25:21 16       from the courts.

13:25:22 17               THE COURT:  Thank you.

13:25:23 18               MR. SCHNEIDAU:  Thank you, your Honor.

13:25:29 19               THE COURT:  Mr. Wheeler, do you have anything to say, or

13:25:31 20       Mr. Walters, somebody?

13:25:34 21               MR. WHEELER:  Mr. Walters.  I defer to Mr. Walters, your

13:25:41 22       Honor.

13:25:45 23               MR. WALTERS:  Your Honor, I would just like to address I

13:25:51 24       believe it's two points that were raised by the plaintiff.  The

13:25:54 25       first as to the due process arguments.  I know the Sheriff's

13:25:57  1    attorney has already somewhat addressed those, but the sex offender

13:26:03  2    registration statutes in Louisiana provide ample due process, they

13:26:08  3    provide notice, they provide a hearing, they provide a method and

13:26:14  4    forum for appeal and adjudication or judicial review of those

13:26:19  5    determinations.

13:26:20  6          And with respect to what is being determined, the bureau

13:26:26  7    that makes the determination according to Louisiana Revised Statute

13:26:30  8    15:542, the bureau makes -- not only makes the determination as to

13:26:38  9    whether or not the out-of-state conviction is equivalent to a

13:26:43 10    Louisiana conviction for sex offense, but then also as to the time

13:26:48 11    requirements as mandated by the statute.  So to that extent, that

13:26:54 12    determination has already been made by the bureau, Mr. Quatrevingt

13:26:57 13    had one year to contest that and he did not do so.

13:27:02 14          Furthermore, Louisiana Revised Statute 15:542(F)(1)

13:27:09 15    states that the sex offender registration notification requirements

13:27:12 16    are mandatory and shall not be waived or suspended by any court.

13:27:18 17    What we would read that to mean is that the criminal court judge

13:27:24 18    and the criminal court decisions, he had no authority to make that

13:27:30 19    determination that he was not a sex offender because that

13:27:34 20    determination is made by the bureau.  And if it is to be

13:27:37 21    challenged, it's to be challenged in accordance with the statutory

13:27:41 22    scheme that's provided under Louisiana law.

13:27:43 23          So to the extent that the criminal court judge did make

13:27:47 24    such a determination, we would argue that that determination is

13:27:51 25    more of a one-off or I guess a novelty, if you will, in terms of

13:28:03  1    inspirator effect as to the situation here, that he would not be

13:28:09  2    able to definitively make that determination that Mr. Quatrevingt

13:28:14  3    is not required to register.  And the statute for failure to

13:28:20  4    register is specifically about whether or not the registration is

13:28:24  5    being done in conformance with the Louisiana statutes as identified

13:28:31  6    by the bureau for this particular individual.

13:28:39  7            So with respect to due process, he has already received

13:28:42  8    due process, and, in fact, received multitude of due processes of

13:28:48  9    the same issue as your Honor noted has already been litigated in

13:28:52 10    state court in a civil suit in which the Louisiana First Circuit

13:28:56 11    found that the criminal court decision, the prior 2014 criminal

13:29:02 12    court decision had no effect on the requirement that

13:29:05 13    Mr. Quatrevingt register, nor could it because of the statutory

13:29:11 14    scheme and the way that it is set up.

13:29:15 15            With that in mind, the only, I guess, additional piece we

13:29:21 16    would offer is just in terms of the criminal court's judgments in

13:29:27 17    these two criminal cases and the extent of the effect of those

13:29:33 18    criminal court decisions.  And especially in terms of --

13:29:37 19            THE COURT:  Right, right.

13:29:40 20            MR. WALTERS:  -- the specific facts and the specific

13:29:43 21    evidence put forward, you know, is necessarily tailored to each

13:29:48 22    particular criminal offense or charge that's raised.  And so while

13:29:53 23    the elements may be similar, we would argue that a quashing of a

13:29:58 24    prior indictment for failure to register would not preclude future

13:30:06 25    charges based upon a future failure to register.  They simply just

13:30:11  1   wouldn't be able to charge him again for that violation.

13:30:17  2           And with that, if you don't have any other questions,

13:30:20  3   I'll sit back down.

13:30:22  4           THE COURT:  Uh-uh.  Mr. Menard, anything?

13:30:29  5           MR. MENARD:  No, your Honor, unless you have questions,

13:30:31  6   we have nothing to add.

13:30:32  7           THE COURT:  Okay.  Thank you.  I think you indicated that

13:30:34  8   you thought there would be some stipulations.  Have you discussed

13:30:37  9   that with Mr. Quatrevingt?

13:30:39 10           MR. SCHNEIDAU:  I have not had a chance, your Honor.

13:30:41 11           THE COURT:  Why don't you just go ahead and take a few

13:30:43 12   minutes and do that.

13:30:44 13           MR. QUATREVINGT:  Your Honor, if I may, before we go that

13:30:46 14   route, may I have like a minute to respond to what was said?

13:30:50 15           THE COURT:  Sure.

13:30:52 16           MR. QUATREVINGT:  May I approach the podium?

13:30:54 17           THE COURT:  Actually, I need you to approach it.

13:30:57 18           MR. QUATREVINGT:  Yes, ma'am.

13:31:04 19           So very quickly, in addressing some of the things stated.

13:31:07 20   The notice via military notice, I believe that's at G in the

13:31:20 21   defendants' submissions, and that's not the notice I am referring

13:31:28 22   to when I argue lack of notice, I am referring to the notice when

13:31:31 23   the department sent in 2010, an increase in tier, and the notice

13:31:36 24   stated that I am allowed one year to appeal the two decisions.

13:31:40 25   That's the notice I am referring to --

13:31:43  1          THE COURT:  Where is that?

13:31:45  2          MR. QUATREVINGT:  -- that is inappropriate.  That is at

13:31:48  3  D, your Honor.  That's the notice I am referring to when I say

13:31:58  4  notice was lacking.

13:31:59  5          And there were several -- I think the defendant submitted

13:32:03  6  the actual motion to quash that we filed.  There were several

13:32:06  7  arguments submitted in that quash asserting due process violations

13:32:10  8  just based on the letter and the delivery of the letter and the

13:32:13  9  substance of the letter.  Those were never heard because they were

13:32:16 10  made moot by the judge's decision that sex offender laws don't

13:32:19 11  apply.  So I never even got to litigate those matters.

13:32:22 12          And that's another subset of the due process that there

13:32:28 13  were probably seven arguments that I never got to argue because the

13:32:31 14  judge decided we don't need to hear all of these, you don't have an

13:32:34 15  obligation to register, and he threw out the case.

13:32:37 16          THE COURT:  But didn't you, Mr. Quatrevingt, wasn't this

13:32:41 17  part of your declaratory judgment that was ultimately filed in the

13:32:45 18  22nd and then transferred to Baton Rouge and then through the First

13:32:50 19  Circuit where the exception was filed?

13:32:52 20          MR. QUATREVINGT:  Where the exception -- oh, the state's

13:32:55 21  exception?

13:32:56 22          THE COURT:  The exception, the peremptory exception that

13:33:01 23  was when the First Circuit said it wasn't timely.

13:33:03 24          MR. QUATREVINGT:  Right.  And, your Honor, what I would

13:33:04 25  argue --

13:33:06 1          THE COURT:  Wasn't this the substance of that motion?

13:33:10 2    This letter?

13:33:11 3          MR. QUATREVINGT:  No, ma'am.

13:33:12 4          THE COURT:  It was not?

13:33:13 5          MR. QUATREVINGT:  I don't believe so, no.  That wasn't my

13:33:15 6    intent.  No, my intent was that I at that point had a judgment

13:33:19 7    determining that I was not subject to the sex offender laws.

13:33:23 8          And I think that's another divergence we have is that the

13:33:27 9    defendants continuously through all of these litigations have held

13:33:31 10   that a quash doesn't do away with sex offender registration

13:33:36 11   requirements, and I agree with that, your Honor.  I agree a quash

13:33:39 12   quashes an indictment.

13:33:40 13         THE COURT:  Right.

13:33:41 14         MR. QUATREVINGT:  It's not that that I am asserting does

13:33:43 15   away with the requirement to register.  It's the judge's

13:33:47 16   determination in that quash.  The quash is just the action taken --

13:33:51 17         THE COURT:  I understand.

13:33:52 18         MR. QUATREVINGT:  -- based on the judicial determination

13:33:53 19   that this is not equivalent to a sex offense, and our law requires

13:33:57 20   it to be equivalent to a sex offense.

13:34:00 21         THE COURT:  But isn't that now working its way through

13:34:02 22   the First Circuit?

13:34:03 23         MR. QUATREVINGT:  I would suggest it's not, your Honor.

13:34:06 24   2014 that decision came down and that was not appealed.

13:34:09 25         THE COURT:  I know, but weren't you recently indicted for

13:34:12  1    the same offense --

13:34:13  2             MR. QUATREVINGT:  Yes, ma'am.

13:34:14  3             THE COURT:  -- just different timeline --

13:34:15  4             MR. QUATREVINGT:  Yes, ma'am.

13:34:16  5             THE COURT:  -- and the judge again quashed the

13:34:21  6    indictment?

13:34:22  7             MR. QUATREVINGT:  Yes, ma'am.

13:34:22  8             THE COURT:  And that's working its way through the First

13:34:25  9    Circuit, is it not?

13:34:25 10             MR. QUATREVINGT:  That's going through the First Circuit.

13:34:27 11    And it's currently not stayed, just put on the record.  The state

13:34:30 12    did move to stay it and the judge denied that stay.  I haven't been

13:34:34 13    noticed of anything else from the First Circuit yet, so that's --

13:34:37 14             THE COURT:  Move to stay --

13:34:38 15             MR. QUATREVINGT:  Move to stay the judgment of quashing.

13:34:41 16             THE COURT:  Oh, okay.  All right.  Because it's on appeal

13:34:44 17    to the First Circuit?

13:34:45 18             MR. QUATREVINGT:  Right.  Yes, ma'am.

13:34:46 19             THE COURT:  But that was denied?

13:34:47 20             MR. QUATREVINGT:  That was denied yes, ma'am.

13:34:49 21             THE COURT:  All right.  And so I guess where I am at this

13:34:53 22    point is, this is working its way through the circuit, why would I

13:34:57 23    interject myself right in the middle of it?

13:34:59 24             MR. QUATREVINGT:  Well, your Honor, I would say the facts

13:35:02 25    that I am asserting are not working their way to the First Circuit,

13:35:05  1    they're not going through the First Circuit.  The state's going to

13:35:06  2    try, but the 2014 decision is final, it's been final.  I have a

13:35:11  3    certification from that I can provide you from the clerk of court

13:35:13  4    that they never filed anything in that.  So that 2014 decision is

13:35:17  5    not even going before the First Circuit.

13:35:20  6            And so purely based on what I've read in the law, they

13:35:25  7    can't change it.  I mean --

13:35:28  8            THE COURT:  No, that's -- I understand, I understand that

13:35:31  9    that's a final judgment as of 2014 --

13:35:38 10            MR. QUATREVINGT:  Right.

13:35:39 11            THE COURT:  -- when the indictment was quashed.  And

13:35:43 12    that's done, that criminal proceeding is over, that's a final

13:35:47 13    judgment.

13:35:48 14            MR. QUATREVINGT:  Right.  And I hate to correct you, I

13:35:50 15    just want to make sure I'm getting my point across.  You said

13:35:54 16    that's a quash, but that's not what I am basing it on.  I'm basing

13:35:56 17    it on that's when the judge made a decision or determination.

13:36:01 18            THE COURT:  A finding.

13:36:02 19            MR. QUATREVINGT:  Right.  I just wanted to make sure I

13:36:03 20    was clear.

13:36:04 21            THE COURT:  I understand you're saying the judge quashed

13:36:06 22    the indictment on this certain basis, and as a result, that's

13:36:09 23    final.

13:36:09 24            MR. QUATREVINGT:  Yes, ma'am.  That would be my

13:36:14 25    assertion.

13:36:14   1          May I continue?

13:36:16   2          THE COURT:  Sure.

13:36:16   3          MR. QUATREVINGT:  The notice from the military that the

13:36:20   4   defendant submitted at G, I would just like to point out when

13:36:22   5   you're reviewing that that there are two specific boxes; one is a

13:36:28   6   sexual offense, the other is sexual offenses, and neither one of

13:36:31   7   them is checked.  They specifically excluded my conviction as a sex

13:36:35   8   offense.

13:36:36   9          I would also like to point out that this is a

13:36:39  10   correctional document, not a document from the court, for what it's

13:36:42  11   worth.  I don't think this should be viewed as an order from a

13:36:47  12   court to register as a sex offender.  It's purely a procedural

13:36:52  13   thing between law enforcement agencies, just as the defendants

13:36:55  14   would do if they were to release a defendant from their jail going

13:36:59  15   to Texas or Ohio or anywhere else, they would notify that

13:37:04  16   department that, hey, we think this person might be a sex offender,

13:37:07  17   he is coming to your neighborhood.  And it actually specifies that

13:37:13  18   you have to comply with state law.  And again, that's where I go

13:37:19  19   back to state law depicts who is a sex offender, and now two judges

13:37:25  20   have decided our state law says I am not.

13:37:33  21          The defendant, I think Mr. Wheeler or Walters --

13:37:38  22   Mr. Walters, he alleged that I essentially waited eight years to

13:37:44  23   hear this.  I haven't, your Honor, I fought this continuously since

13:37:48  24   2010; first in criminal proceedings, then in civil proceedings.  I

13:37:52  25   don't know what I am doing.  I am reading along trying to learn as

13:37:55  1    quick as I can to keep up.  And going through the state courts like

13:38:01  2    I was told I had to before I could come to federal court, and

13:38:03  3    proceeded all the way through.  This hasn't been eight years waited

13:38:07  4    and finally popped in here and said, hey, this ain't right.  I have

13:38:10  5    been fighting this over and over again stating the same thing.

13:38:14  6        In regards to SORNA requirements that the Sheriff's

13:38:21  7    Office cites.  I have the sex offender registration notification, I

13:38:28  8    don't know what it's called, manual I guess I'll call it, it's

13:38:30  9    issued by the Department of Justice, Office of Sex Offender

13:38:33  10   Sentencing, Monitoring, Apprehending, Registering, and Tracking,

13:38:35  11   SMART office they call it.  If I could just read two little

13:38:38  12   sentences just to stress my point.

13:38:40  13       One is on page 6, the first paragraph it says, "Generally

13:38:44  14   speaking, however, in practice the jurisdiction will not register

13:38:48  15   an offender unless that jurisdiction's laws require that the

13:38:52  16   offender be registered."

13:38:54  17       So the other one is page -- I'm sorry, I should have read

13:39:01  18   this in the opposite order, this is page 1 of 26.  "Each state has

13:39:05  19   its own distinct sex offender registration notification system."

13:39:09  20   It goes on to list several of them.  "Every one of these systems

13:39:13  21   has its own nuances and distinct features.  Every jurisdiction

13:39:17  22   (meaning each state, territory, or tribe) makes its own

13:39:21  23   determinations about who will be required to register."

13:39:25  24       So when the defendants allege that there is a federal

13:39:27  25   requirement to register, there isn't.  SORNA created, I call it a

13:39:30  1    scheme, not in the negative sense, but a scheme to help the nation

13:39:35  2    to become a baseline.  And states are --

13:39:40  3          THE COURT:  But you understand Louisiana statute says

13:39:43  4    that it's for state offenses and federal offenses that are

13:39:47  5    equivalent?

13:39:48  6          MR. QUATREVINGT:  Yes, your Honor.

13:39:49  7          THE COURT:  Okay.

13:39:50  8          MR. QUATREVINGT:  I do understand that.  And I agree with

13:39:52  9    that.  Any equivalent offense.  And that's the assertion I have is

13:39:59  10   that now two judges have said this military conviction is not

13:40:03  11   equivalent, which nullifies everything around sex offender law.  If

13:40:09  12   it has to be equivalent and two judges, one finally, the other as

13:40:14  13   you stated is going up to the First Circuit, have said it's not

13:40:18  14   equivalent, then where do we get a provision that requires

13:40:23  15   registration?  We don't.  After another conviction, which I don't

13:40:27  16   have another conviction, and I don't think the defendants are

13:40:29  17   asserting that I do.

13:40:30  18         THE COURT:  Okay.

13:40:31  19         MR. QUATREVINGT:  Okay.  In regards to Judge Coady quash

13:40:37  20   refusing to issue an injunction, or I forget the exact term that I

13:40:41  21   asked for at that time.  Judge Coady explained in court that he

13:40:46  22   didn't have the authority because he had quashed the case.  The

13:40:49  23   matter was closed at that point.

13:40:51  24         And I would just argue that when I first sued the

13:40:55  25   Attorney General of Louisiana, that case -- did it in St. Tammany

13:41:00  1    Parish -- and it was determined that it was improper subject matter

13:41:03  2    jurisdiction and improper venue.  I took that appeal to the First

13:41:07  3    Circuit and they held that the district court judge had subject

13:41:10  4    matter jurisdiction, it should be improper venue.  Now, I have to

13:41:13  5    assert, your Honor, that makes it clear that district courts in

13:41:16  6    Louisiana have subject matter jurisdiction.  Venue is the only

13:41:21  7    question at that point.  They're asserting he likely didn't have

13:41:25  8    the authority.  But a criminal court judge --

13:41:28  9             THE COURT:  Now you've lost me because you kind of --

13:41:31 10    okay.

13:41:34 11             MR. QUATREVINGT:  Real simple, your Honor.  The First

13:41:37 12    Circuit said district courts have subject matter.

13:41:37 13             THE COURT:  Right.

13:41:39 14             MR. QUATREVINGT:  Judge Coady was a district court so he

13:41:42 15    had subject matter jurisdiction.

13:41:43 16             THE COURT:  That doesn't mean that he had the authority

13:41:45 17    to hear that particular case because he lacked venue, it had to be

13:41:49 18    brought in East Baton Rouge Parish; and at that time Judge Morvant

13:41:53 19    granted the peremptory exception, which was appealed to the First

13:41:57 20    Circuit and affirmed there.

13:41:58 21             MR. QUATREVINGT:  Right, your Honor.  What I am saying is

13:42:01 22    he had subject matter jurisdiction, he had venue in that civil

13:42:03 23    proceeding.  He did have venue in the criminal proceeding where he

13:42:07 24    made the determination --

13:42:08 25             THE COURT:  I don't think anybody is saying that Judge

13:42:11  1    Coady did not have jurisdiction to quash that indictment.

13:42:14  2              MR. QUATREVINGT:  Okay.

13:42:15  3              THE COURT:  That was clear.

13:42:17  4              MR. QUATREVINGT:  Okay.  The defendants again asserted

13:42:28  5    that the statutes provide a method and a forum to appeal, and

13:42:33  6    again, I think that's where we diverge because 15:542.1.3, which

13:42:40  7    they throw out through all of these proceedings, they said is the

13:42:43  8    controlling statute, and I would agree with that.  It specifies

13:42:48  9    that the bureau shall determine which period of registration the

13:42:53  10   provisions of 544 and the frequency of in-person under 542, and

13:42:59  11   then it goes on to say -- I'm sorry, your Honor, I thought I had it

13:43:05  12   circled on here.

13:43:07  13             THE COURT:  But you did have an opportunity to appeal the

13:43:11  14   method and the tier classification for the registration, because

13:43:16  15   that's the issue in my view is whether or not what classification

13:43:21  16   should have been, and you had an opportunity to appeal it and you

13:43:24  17   didn't bring it timely.

13:43:25  18             MR. QUATREVINGT:  And that's where we diverge, your

13:43:27  19   Honor.

13:43:27  20             THE COURT:  Did you bring it timely?

13:43:29  21             MR. QUATREVINGT:  I believe I did.

13:43:30  22             THE COURT:  When?

13:43:31  23             MR. QUATREVINGT:  Through the Judge Coady court, through

13:43:33  24   the 22nd.

13:43:34  25             THE COURT:  Yeah, but you had a year, I think they gave

13:43:37  1   you notice in 2010, you had a year after that to appeal it.

13:43:40  2               MR. QUATREVINGT:  Right.  And may I?

13:43:44  3               THE COURT:  Sure.

13:43:45  4               MR. QUATREVINGT:  Section 4 of 542.1.3 says a lot.  And

13:43:51  5   it says, "May appeal the bureau's determination of the applicable

13:43:53  6   time period of registration and frequency of in-person periodic

13:43:57  7   renewals through an administrative hearing as provided in R.S.

13:44:04  8   49:950, et seq."  Okay, and I agree with that.

13:44:06  9               When you review 49:950, et seq, you come to 49:964, which

13:44:13 10   cites, "Except as provided in R.S.  15:1171 through 1177" -- which

13:44:18 11   are applicable to inmates in correctional facilities -- "a person

13:44:21 12   who is aggrieved by a final decision or order in an adjudication

13:44:25 13   proceeding is entitled to judicial review under this chapter

13:44:28 14   whether or not he has applied to the agency for rehearing, without

13:44:32 15   limiting, however, utilization of or the scope of judicial review

13:44:37 16   available under other means of review, redress, relief, or trial de

13:44:42 17   novo provided by law."

13:44:43 18               And that's where I assert, your Honor, that the criminal

13:44:47 19   court proceeding was a trial de novo, it was a trial on the same

13:44:51 20   topic; provided by law, it was a criminal trial so it was

13:44:55 21   definitely provided by law.  And this statute 49:964, which is the

13:45:02 22   controlling statute per 541.1.3, says that --

13:45:08 23               THE COURT:  Wait.  I just want to make sure you

13:45:14 24   understand that there is an administrative proceeding that you have

13:45:17 25   to file to appeal the determination --

13:45:21  1          MR. QUATREVINGT:  Well, your Honor --

13:45:23  2          THE COURT:  -- and then when you're aggrieved by that

13:45:26  3   determination, then you have to file your --

13:45:30  4          MR. QUATREVINGT:  Your Honor, 49:964 says contrary to

13:45:34  5   that.  It says that that availability does not limit the scope of

13:45:40  6   judicial review available under other means of review.

13:45:42  7          THE COURT:  Okay.

13:45:43  8          MR. QUATREVINGT:  So that's my argument is that I

13:45:47  9   couldn't sit there and focus on an administrative privilege,

13:45:50  10  because that's what administrative hearings are, they are a

13:45:53  11  privilege to save you all of this drama, eight years of court and

13:45:57  12  what not.  You get to go administratively and probably a lot

13:46:00  13  cheaper, and I wish I would have done it.  But instead I had to

13:46:04  14  fight a criminal court judge and I did.  And that is the other

13:46:09  15  review that 49:964 allows.

13:46:13  16          And the Fifth Circuit has upheld that, your Honor, in

13:46:16  17  *Romano v. Greenstein*, the Fifth Circuit, in the matter regarding

13:46:21  18  the Department of Health and Hospitals and a Medicaid claim held

13:46:24  19  that language in 49:964 allows a district court to hear a matter,

13:46:31  20  because it doesn't limit the scope of judicial review available

13:46:35  21  under other means of review.  And I've submitted that in brief to

13:46:39  22  your Honor.

13:46:39  23          THE COURT:  Okay.

13:46:44  24          MR. QUATREVINGT:  And regards to 542.1.3 again, the

13:46:48  25  defendants keep asserting that they have the authority to determine

13:46:52  1   who is a sex offender, and I would love to have a brief on that or

13:46:56  2   something because I have not found it in the statute.  Admittedly I

13:47:00  3   may be missing it, but I've read the statute a dozen times.  I see

13:47:03  4   where they have the authority to determine time frame and frequency

13:47:05  5   of an offender, but not where they're given authority to determine

13:47:09  6   who is an offender.  It's my firm belief that that is statutorily

13:47:13  7   delegated.

13:47:22  8           And finally in closing, I would say due process requires

13:47:28  9   finality, your Honor.  2014 the judge made a decision that went

13:47:32 10   unappealed to this day.  It's not appealable anymore.  That

13:47:35 11   determination was this military conviction is not a sex offense in

13:47:40 12   Louisiana.  So absent any other sex offense, why should I have an

13:47:46 13   obligation to register?

13:47:47 14           Do you have any questions for me, your Honor?

13:47:52 15           THE COURT:  Uh-uh.  Thank you.

13:47:53 16           MR. QUATREVINGT:  Thank you, ma'am.

13:47:55 17           THE COURT:  Do you want to review to see if there are any

13:47:58 18   stipulations, so that I'll give you a few minutes just to do that.

13:48:01 19           MR. SCHNEIDAU:  That would be fine, your Honor.  If I

13:48:04 20   could have just a few, I'll be brief, rebutting, I promise.

13:48:08 21           THE COURT:  Very, very brief.

13:48:09 22           MR. SCHNEIDAU:  The process of review that we're talking

13:48:11 23   about, if the quash was all that mattered, why file the action in

13:48:16 24   the 19th JDC to begin with?  Why go through that process?  Because

13:48:21 25   obviously the quash is not all that matters, that's the first

13:48:24  1    point.

13:48:24  2            Second point, there was a reference made to whether

13:48:27  3    registration is required under federal law.  I believe we cited

13:48:30  4    this in our brief and I think we referenced this, 18, United States

13:48:33  5    Code, 2250 is the requirement under federal law.

13:48:37  6            Thank you, your Honor.

13:48:39  7            THE COURT:  And I am going to ask you all to take a few

13:48:42  8    minutes and see if we can come to some stipulations so that we can

13:48:48  9    be done.  I'll be at recess for about five or ten minutes.  Why

13:48:52 10    don't you all talk about it.  I think you said you hadn't reviewed

13:48:57 11    with Mr. Quatrevingt any stipulations, why don't you do that.

13:48:59 12            MR. SCHNEIDAU:  And that could avoid the need for witness

13:49:02 13    testimony.

13:49:03 14            THE COURT:  Thank you.

13:49:03 15            MR. SCHNEIDAU:  Thank you.

13:49:06 16            THE COURT:  The court will be at recess for as long as

13:49:09 17    you need to be at recess for.

13:49:10 18            THE DEPUTY CLERK:  All rise.

13:49:12 19        (WHEREUPON, A RECESS WAS TAKEN.)

14:03:20 20        (OPEN COURT.)

14:03:21 21            THE DEPUTY CLERK:  Court's back in session.  You may be

14:03:23 22    seated.

14:03:24 23            THE COURT:  Have you all been able to reach --

14:03:26 24            MR. SCHNEIDAU:  Your Honor, I believe we have.  Perhaps,

14:03:28 25    your Honor, if I can state the stipulation, he can just respond

14:03:32  1   agreed.

14:03:33  2              THE COURT:  Why don't you come up, Mr. Quatrevingt,

14:03:35  3   please.

14:03:35  4              MR. QUATREVINGT:  Yes, ma'am.

14:03:36  5              MR. SCHNEIDAU:  Your Honor, and just to note, these

14:03:38  6   stipulations are just between the Sheriff, the deputy defendants,

14:03:41  7   and Mr. Quatrevingt.

14:03:43  8              The first stipulation is that the Sheriff does not decide

14:03:49  9   who is or is not on the sex offender registry list; and in

14:03:54 10   conjunction with that, has no authority to add or remove persons

14:03:58 11   from that list independently.

14:03:59 12              THE COURT:  Is that correct?

14:04:02 13              MR. QUATREVINGT:  Yes, your Honor.

14:04:03 14              THE COURT:  Thank you.

14:04:03 15              MR. SCHNEIDAU:  The second stipulation, your Honor, is

14:04:04 16   that Mr. Quatrevingt has previously appeared in both Tangipahoa

14:04:08 17   Parish and St. Tammany Parish and provided registration information

14:04:14 18   to those authorities there for the sex offender registry list.  And

14:04:18 19   we'll also stipulate that his stated reason for doing so, without

14:04:23 20   our agreement to that, his stated reason for doing so was to avoid

14:04:29 21   arrest.

14:04:29 22              MR. QUATREVINGT:  Yes, your Honor.

14:04:30 23              THE COURT:  Thank you.

14:04:31 24              MR. SCHNEIDAU:  The third stipulation would be that

14:04:33 25   Mr. Quatrevingt's name is currently on the sex offender registry

14:04:38 1    list on file with the St. Tammany Parish Sheriff.

14:04:41 2           MR. QUATREVINGT:  Yes, your Honor.

14:04:42 3           THE COURT:  All right.

14:04:44 4           MR. SCHNEIDAU:  And the final stipulation is that the

14:04:47 5    St. Tammany Parish Sheriff's Office has a policy to verify the

14:04:52 6    address information reported by any offender on the list, any and

14:04:57 7    all offenders on the list through a site visit, or multiple visits.

14:05:03 8           MR. QUATREVINGT:  I agree, your Honor.

14:05:04 9           THE COURT:  Thank you.

14:05:09 10          MR. SCHNEIDAU:  And, your Honor, that's it.

14:05:10 11          THE COURT:  Okay.  So if I understand, is he currently --

14:05:13 12   are you currently registered, Mr. Quatrevingt?

14:05:16 13          MR. QUATREVINGT:  Against my will, yes, your Honor.

14:05:19 14          THE COURT:  No, but I mean --

14:05:20 15          MR. QUATREVINGT:  I am on the website and on the

14:05:24 16   registry, yes.

14:05:25 17          THE COURT:  And I understand he is saying basically -- I

14:05:29 18   don't want to use any term of art that might be misconstrued -- but

14:05:33 19   he registered only to avoid arrest, not because you believed you

14:05:39 20   were --

14:05:39 21          MR. QUATREVINGT:  Correct, your Honor.

14:05:40 22          MR. SCHNEIDAU:  And I will state, your Honor, to my

14:05:42 23   understanding, his last official registration was in January of

14:05:46 24   this year, so I believe and Mr. Quatrevingt recently filed a motion

14:05:51 25   that had attached to it and it was denied to supplement the record

14:05:53  1    on the TRO, but there was an e-mail and it looks like it comes from

14:05:58  2    the St. Tammany Parish Office.  My client actually advised me that

14:06:00  3    that's an automated e-mail that's produced through the registration

14:06:04  4    system that when someone is on their deadline, since he's every six

14:06:09  5    months and his last registration was in January, that he would be

14:06:13  6    required at this point under --

14:06:16  7                THE COURT:  So he has not registered since January?

14:06:18  8                MR. QUATREVINGT:  Correct, your Honor.

14:06:19  9                THE COURT:  Okay.  All right.  Thank you all.

14:06:26 10                MR. SCHNEIDAU:  Thank you, your Honor.

14:06:27 11                THE COURT:  I am going to issue a ruling, not today.

14:06:32 12                MR. QUATREVINGT:  Yes, ma'am.

14:06:33 13                THE COURT:  Thank you.  The court will be -- court's

14:06:41 14    adjourned.

14:06:41 15                THE DEPUTY CLERK:  All rise.

14:06:42 16         (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

17

18                              *  *  *  *  *  *

19

20                         REPORTER'S CERTIFICATE

21         I, Karen A. Ibos, CCR, Official Court Reporter, United
       States District Court, Eastern District of Louisiana, do hereby
22     certify that the foregoing is a true and correct transcript, to the
       best of my ability and understanding, from the record of the
       proceedings in the above-entitled and numbered matter.

23

24            ___/s/ Karen A. Ibos_____
               Karen A. Ibos, CCR, RPR, CRR, RMR
25             Official Court Reporter